UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ROBIN LEE SHERWOOD,<br><br>        Petitioner,<br><br>   v.<br><br>GEORGE NEOTTI, Warden,<br><br>        Respondent. | No. ED CV 11-1728-CJC (PLA)<br><br>**ORDER ACCEPTING FINDINGS,<br>CONCLUSIONS, AND RECOMMENDATION<br>OF UNITED STATES MAGISTRATE JUDGE** |

On April 17, 2020, the United States Magistrate Judge issued a Final Report and Recommendation ("Final R&R"), recommending that the Petition be dismissed with prejudice because petitioner's claim of ineffective assistance of counsel lacked merit. (ECF No. 169). On May 1, 2020, petitioner filed Objections to the Final R&R. (ECF No. 171).

Petitioner asserts numerous objections to the factual findings and legal conclusions set forth in the Final R&R. In particular, petitioner challenges the finding that his trial counsel, Michael Belter, provided credible testimony at the evidentiary hearing. Petitioner asserts that Mr. Belter had reason to be biased against him because petitioner had complained about Mr. Belter's conduct in the past and had submitted a formal complaint to the California State Bar after Mr. Belter refused to provide petitioner his trial records. (ECF No. 171 at 8). From reviewing Mr. Belter's testimony as a whole, the Court finds no indication that Mr. Belter had any bias against

petitioner. The fact that petitioner complained about Mr. Belter's assistance does not by itself render Mr. Belter's testimony at the evidentiary hearing not credible.[1]

Additionally, petitioner disputes the veracity of Mr. Belter's testimony describing the events that took place on the day petitioner entered his guilty plea, in particular Mr. Belter's statement that he and petitioner had a ninety-minute discussion about petitioner's desire to plead guilty during the lunch break before the plea proceeding began. (ECF No. 169 at 16-17). Petitioner contends that Mr. Belter's testimony is contradicted by petitioner's own statement that Mr. Belter went to lunch with the prosecutor that day and did not speak to petitioner during the lunch break. (ECF No. 171 at 7 (citing EH RT 111)). This challenge to Mr. Belter's credibility is based on the evidentiary hearing testimony of respondent's psychiatric expert, Dr. Alan Abrams, in which Dr. Abrams described what petitioner reported during a 2019 psychological evaluation:

| | |
|---|---|
| [Petitioner's counsel]: | Okay. Now, you also discussed with [petitioner] when you talked to him [about] the circumstances of his plea? |
| [Dr. Abrams]: | Yes, that was my primary focus as we agreed in the protective order. |
| [Petitioner's counsel]: | And when you talked to him, he told you that he plead[ed] guilty after he saw his defense attorney coming back from lunch at a Mexican restaurant with the D.A.? |
| [Dr. Abrams]: | Yes. |
| [Petitioner's counsel]: | And he concluded that his attorney wasn't helping him. |
| [Dr. Abrams]: | Of course. |
| [Petitioner's counsel]: | And when you asked [petitioner] whether he suffered paranoia, his response was that he believed the D.A. and his defense attorney were working together, didn't he? |
| [Dr. Abrams]: | Yes. |

(EH RT 111).

---

[1] Regarding petitioner's complaint made in 2008 to the California State Bar, Mr. Belter testified that he did not promptly turn over petitioner's trial file out of concern that certain individuals identified in the file might become at risk for gang retaliation given petitioner's gang ties. When directed by the California State Bar to provide petitioner the file, Mr. Belter complied. (Evidentiary Hearing Reporter's Transcript ("EH RT") 76-77).

The Court is not persuaded that the above testimony contradicts Mr. Belter's statement about his lengthy pre-plea discussion with petitioner, as petitioner's remarks about Mr. Belter and the D.A. conspiring against him have no support in the record. Moreover, petitioner's baseless accusation is undercut by his own testimony at the plea hearing, in which he stated that he had sufficient time to consult with Mr. Belter concerning his intent to plead guilty, and that Mr. Belter had explained the written plea declaration to him and petitioner had sufficient time to consider the meaning of each statement on the form. (See Reporter's Transcript 340). See Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (a defendant's representations at a plea hearing constitute a "formidable barrier in any subsequent collateral proceedings" as "[s]olemn declarations in open court carry a strong presumption of verity").

Regarding the determination in the Final R&R that the handwritten notes in the trial file were authored by petitioner and reflected his mental competence, petitioner argues that Mr. Belter testified at the evidentiary hearing that "he did not see [petitioner] write many of these notes and does not know if someone else helped him write them." (ECF No. 171 at 8 (citing EH RT 88-89)). Petitioner's challenge to the trial notes is unavailing. Mr. Belter testified at the evidentiary hearing that it was his practice to give his clients a pad of paper and a pencil and ask them to write things down, after which the notes would be placed in their file. While Mr. Belter believed that petitioner was the author of the notes at issue, during cross-examination he stated that he did not recall seeing petitioner write many of the notes. (Exhibit 50 at ¶ 11; EH RT 89). The Court observes that the notes, however, are written in the first person -- "When I was pulled over, I was told by [the] Detective I needed to come to the station"; "[the] Detective did not read Miranda[2] until after 45 min. of giving me all of his evidence[] and questioning me"; "I believe I said this in the Detective's vehicle on the way to the station"; "I don't think I said crazy or stupid stuff until[] I felt I had been tricked and felt betrayed." (See EH Exhibit 52 at 1524, 1765, 1800). Additionally, the substance of the notes are consistent with petitioner's discussions with Mr. Belter about legal issues and defense strategy. (See ECF No. 169 at 15-16). The Court has also compared the trial

---

[2] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

notes with petitioner's post-conviction letters sent to the superior court, and finds that the handwriting is consistent.[3] Moreover, petitioner in his Objections does not assert that another individual wrote the notes, let alone identify any other individual as the author. Based on the foregoing, the Court agrees with the finding in the Final R&R that the handwritten notes reflect petitioner's mental competence. Even if, as petitioner appears to suggest, petitioner may have drafted the notes with the help of another individual, the notes nevertheless reflect that petitioner was actively participating in his defense.

As for the determination in the Final R&R that petitioner's statements in his recorded jail calls that took place from April to June 2004 also indicated his competence, petitioner asserts that the calls provide no such insight as they only cover a three-month time frame and occurred several years before the guilty plea was entered. (ECF No. 171 at 9). As the Final R&R points out, however, petitioner's psychiatric expert, Dr. Nathan Lavid, opined that petitioner was incompetent from January 2004 through November 2006 -- a time frame that includes the dates when petitioner made the recorded jail calls. The Final R&R appropriately faulted Dr. Lavid's opinion of incompetence for failing to explain how petitioner could be incompetent in 2004 yet capable of acting rationally and coherently during these recorded conversations. (See ECF No. 169 at 29-30).

Next, petitioner objects to the Final R&R's legal analysis, asserting that a determination of the prejudice prong for his claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requires an analysis of whether petitioner demonstrated a reasonable probability that, absent Mr. Belter's errors, the result of the proceeding would have been different. (ECF No. 171 at 11). Petitioner asserts that

---

[3] In particular, the Court notes that petitioner in his letters to the superior court improperly used apostrophe marks in plural words (e.g., "they said they took gun's to kill someone"; "I see a lot of back and forth decision's on the felony murder law"; "after telling my attorney all of this for three year's, he still did not address this . . . point"). (EH Exhibit 54 at 3031, 3033, 3040). This same improper use of apostrophes can be seen in the handwritten notes in petitioner's trial file (e.g., "In other word's wouldn't this mean . . ."; "Write down any idea's?"; "I said I had bullet's on top of my refrigerator"). (EH Exhibit 52 at 1765, 1800, 1802). This distinct similarity is further indication that petitioner is the author of the handwritten notes from the trial file.

he made this prejudice showing, because had Mr. Belter investigated petitioner's mental health, "not only could [Belter] have declared doubt as to competence, it would have also allowed [Belter] to prepare a different defense strategy based on [petitioner's] mental illness, including negotiating a plea deal once [petitioner] was restored to competency." (Id. at 12). Petitioner further asserts that there is a reasonable probability that "by ensuring that [petitioner] received adequate treatment for his mental illness, after [petitioner] was restored to competency, Belter could have been able to persuade [petitioner] to proceed with his trial." (Id. at 13).

Generally, in the context of a collateral attack on a guilty plea, Strickland's prejudice prong requires that the petitioner show "there is a reasonable probably that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Here, pursuant to Deere v. Cullen, 718 F.3d 1124, 1145 (9th Cir. 2013), the Final R&R addresses the prejudice prong by considering whether there is a reasonable probability that, had Mr. Belter moved for a competency hearing, petitioner would have been found incompetent to plead guilty. See Deere, 718 F.3d at 1145 ("The question on this aspect of the case boils down to this: whether [the petitioner] suffered any prejudice from the lack of a competency hearing, even assuming for the sake of argument that [his counsel] should have moved for one? Put another way, was there a reasonable probability that he would have been found incompetent to plead guilty?"); see also Theriot v. Whitley, 18 F.3d 311, 313 (5th Cir. 1994) ("[A] claim of incompetence is difficult to analyze under the "outcome" test in Strickland . . . . [The petitioner] can succeed in establishing that he was prejudiced by his attorney's failure to investigate only if he can demonstrate by a reasonable probability that he was incompetent to plead guilty."). But even if the prejudice prong of the Strickland test is considered under the standard set forth in Hill, petitioner's ineffective assistance claim still fails. Petitioner's assertions of prejudice under the Hill standard presume that he would have been found incompetent had a competency hearing took place prior to his plea, as he argues that he could have, after being restored to competency, either proceeded with his trial or negotiated a better plea deal. As the Final R&R concludes, however, it is not reasonably likely that, had Mr. Belter declared a doubt as to petitioner's competency, the trial court would have found petitioner incompetent. Accordingly,

petitioner's prejudice arguments fail as there is no showing that, had a competency hearing been held, petitioner would have chosen to continue with his trial after being found competent.

The Court has reviewed petitioner's remaining objections and finds that they are adequately addressed in the R&R.

## CONCLUSION

Based on the foregoing and pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the other records on file herein, the Magistrate Judge's Final Report and Recommendation, and petitioner's Objections to the Final Report and Recommendation. The Court has engaged in a de novo review of those portions of the Final Report and Recommendation to which objections have been made. The Court concurs with and accepts the findings and conclusions of the Magistrate Judge.

ACCORDINGLY, IT IS ORDERED:

1. The Final Report and Recommendation is accepted.
2. Judgment shall be entered consistent with this Order.
3. The clerk shall serve this Order and the Judgment on all counsel or parties of record.

DATED: May 21, 2020

HONORABLE CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE